## MICHAEL v SAUL

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1710. Decided Dec. 29, 1941

Irvin C. Delscamp, Dayton, for plaintiff-appellant.

Shank & List, Dayton, for defendant-appellee.

### OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The action was one for personal injuries claimed to have been inflicted upon Richard Michael and proximately caused by the negligence of the defendant, Calvin Saul. The case was tried before a court and a jury, and resulted in a verdict for the plaintiff in the sum of $620.00. Thereafter, on motion of defendant, the court rendered judgment non obstante veredicto in favor of the defendant, and dismissed plaintiff's action.

Within proper time plaintiff filed his notice of appeal and all other papers necessary to properly lodge the case in our court.

Appellant's assignment of errors is set forth in three separately numbered specifications, but all may be summarized under the claim that the court erred in rendering final judgment non obstante veredicto in favor of the defendant against the plaintiff.

Counsel for the respective parties have filed very comprehensive and helpful briefs. We do wish that counsel generally would form the habit of observing our recommendation under our Rule 7 in the preparation of briefs,

particularly as to the provisions relative to index or skeleton brief. We take it that counsel desire to so present their arguments as to be most helpful to the court. In our recommendation under Rule 7, we have sought to advise counsel as to what will be most helpful.

Our determination of the case requires us to make a very full examination of the pleadings and the bill of exceptions. This we have done.

Plaintiff's petition, in substance, after certain formal allegations, alleges that on September 7, 1939, between the hours of 8 and 9 P. M. of said day, the defendant, Calvin Saul, was driving a team of mules hitched to an empty hay wagon, eastwardly out of a lane on the west side of Union Road on to the Union Road; that the night was dark and that said hay wagon was being driven without warning lights and that defendant took no measures to warn traffic of this unlighted hay wagon. That at the same time Richard Michael was operating his motorcycle northwardly on the said Union Road and to the east of the center line thereof; that south of said lane on the Union Road there is a hill which obstructs the view of said lane; that when he reached the intersection of the lane and Union Road, the hay ladder on said wagon and team obstructed the entire road, with the exception of about 2 feet from the west edge thereof; that on the western edge of said road was a narrow ditch, north of the lane; that the headlights of plaintiff's motorcycle were burning; that by reason of the absence of lights upon said wagon and its position on the highway he was unable to see said hay wagon until he was practically in contact with it; that plaintiff's right arm struck the left rear end of the ladder on said wagon, and plaintiff was precipitated into the ditch on the left hand side of the road and received injuries which are set out in detail, together with money outlay in effecting a cure. The petition contains the further specific allegation that the defendant was negligent in that he was driving said empty hay wagon one hour after sunset on said day without having attached thereto a light or lights, which were visible at least 200 feet from the rear of said wagon, and in blocking and obstructing the entire road with the exception of practically 2 feet from the west edge thereof and in failing to give plaintiff any warning that he was obstructing said road.

Plaintiff claims damages in the sum of $7934.68.

Defendant, in his answer, admitted that on the 7th day of September, 1939, he drove a team of mules hitched to a hay wagon eastwardly out of a lane on the west side of Union Road abutting the Saul farm, and avers that he then turned and drove northwardly along the east side of said highway, between the hours of 7:10 and 7:25 P. M. The answer specifically denies that defendant drove said team on the highway at 8 o'clock P. M., or any time which was one hour or more after sunset on said date; denies that it was dark at the time he drove said team on said highway on said date. The answer admits that plaintiff operated a motorcycle northwardly on said Union Road on said date, and that he sustained some injuries. The answer denies that defendant was guilty of any carelessness, negligence or improper conduct, as alleged in plaintiff's petition, and further avers that the injuries in the petition described, if any there were, were caused by the sole fault and sole negligence of plaintiff himself. The answer denies each and every other allegation contained in plaintiff's petition.

Plaintiff's reply specifically denies each and every averment of defendant's answer wherein it is claimed that the injuries were caused by the sole fault and negligence of plaintiff; and further denies all and singular the allegations in defendant's answer, except such as are admissions of plaintiff's petition.

Counsel for both plaintiff and defendant submitted interrogatories. Those submitted at the request of

plaintiff, with the jury's answers, are as follows:

"QUESTION No. 1. Was the failure of light or lights on the hay wagon of the defendant the proximate cause of plaintiff's injury and damage?

"ANSWER No. 1. No.

"QUESTION No. 2. If your answer to Question No. 1 is 'No' what was the proximate cause of plaintiff's injury and damage?

"ANSWER No. 2. The hay wagon was obstructing too much of the roadway."

The interrogatories submitted by defendant, with the jury's answers, are as follows:

"QUESTION No. 1. While the motorcycle of Richard Michael was operated by him northwardly upon the Union Road on September 7, 1939, over the last 200 feet of said highway before Richard Michael arrived at the hay wagon of defendant, Calvin Saul, did the front light on Richard Michael's motorcycle show sufficient light straight ahead on the improved portion of said highway to show any substantial object upon the improved portion of said highway ahead of said motorcycle for a distance of at least 200 feet?"

"ANSWER No. 1. Yes."

The interrogatories were signed by all twelve members of the jury, whereas the general verdict in favor of the plaintiff was signed by only nine.

The bill of exceptions contains some 300 pages. By far the greater volume of the testimony was directed to the approximate time that the accident happened, the visibility, whether light or dark, and the distance that visible objects might be seen without the aid of artificial light.

The jury's answer to defendant's interrogatory No. 1 removes any great importance from this great volume of testimony as to the approximate hour of the accident, the visibility and so forth.

Counsel for plaintiff urge that the jury's answer to this interrogatory would properly leave the inference that it was their determination that the team of mules and the wagon were not a substantial object. We are unable to agree with this argument. We might further say that the evidence amply justifies the conclusion that the team of mules and the empty hay wagon were discernible objects and that there was no obstruction in the highway preventing plaintiff from seeing them as he approached from the south, travelling northwardly.

The petition alleges that south of the lane from which defendant drove on to the highway there is a hill which obstructs the lane. The uncontradicted evidence discloses that the distance from the center of this lane to the crest of the hill was 502 feet. The difference in elevation at the crest of the hill to the center of Union Road immediately east of the center of the lane, was approximately 2½ feet. Between these two points, and near the center, there was a slight dip in the road, but not of such a character as to interfere with the view. It was further shown by the uncontradicted evidence that the defendant, Calvin Saul, during the day of this September 7, had been assisting in the hulling of clover seed on his father's farm, and that, following the shutting down of this hulling operation, he left the farm driving out the lane, a distance of approximately 200 feet, to this Union Road, and making a left hand turn, intending to go to his own farm entrance, on east side of road and located approximately 200 feet north of the lane from which he emerged. The lane from which he drove was generally spoken of as the Phillip Saul lane, the latter being the father of the defendant. On the wagon with defendant was his grown son, who had been assisting in the clover hulling, and also another son, approximately three years of age. The grown son was seated at the rear end of the wagon and on the right hand side.

According to the testimony of plaintiff the team and wagon in crossing the highway obstructed the entire

highway, with the exception of about 2 or 3 feet west of the rear of the wagon.

Defendant and the son riding with him testified that they had completed the turn and that the team and wagon were entirely on the east of the right hand side of the road at the time plaintiff came up on his motorcycle. Other witnesses at the Phillip Saul home, some 200 feet from the highway, testified that they saw the defendant drive out on the highway and make the turn north towards his own home; that they saw the plaintiff on his motorcycle, travelling at a very high rate of speed, and when near the hay wagon make a sudden turn and go into the ditch. The defendant's son, who was on the wagon, testified that he saw the plaintiff coming on his motorcycle down the highway after his father had made the complete turn; that he had his head turned looking over towards the Phillip Saul farm, and apparently was paying no attention to his motorcycle until he was very close to the hay wagon, when he made a sudden swerve and went across the ditch, crashing a hedge fence and then up into the ditch, back into the road, and again into the ditch and back into the road, finally falling off his motorcycle in the center of the road, ahead of the team. Both the defendant and his son testified that plaintiff did not strike the wagon at all.

Plaintiff testified that he did not see the team and wagon until he was within about 18 feet thereof; that then he made a sudden swerve and that in passing the left rear end of the wagon he struck his right arm thereon, breaking it, and then went down into the ditch and on, very much as described by defendant and his son.

Considering the conflicting evidence in its most favorable light to the plaintiff, in connection with the uncontradicted evidence, the query at once arises as to why the plaintiff did not see the team and hay wagon in front of him on the highway. The uncontradicted evidence was that the mule team was walking at an estimated speed of

three miles per hour. Plaintiff says that he was operating his motorcycle at a speed of approximately 35 miles per hour. The evidence does not present a picture of this team suddenly coming out on the highway in front of the plaintiff. Accepting plaintiff's version that the rear end of the hay wagon was some 2 or 3 feet from the west edge of the travelled portion of the highway, it must be conceded that the team part of the time was out on the highway in full view when plaintiff was several hundred feet to the south. This situation at once invokes the provisions of §12603 GC, the pertinent portion of which reads as follows:

"And no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."

This provision of the section is applicable regardless of the time of day or night.

The courts in construing this section have given it a broad, literal construction, but have said that where conditions are shown to exist through which an observance of the assured clear distance ahead provision can not be met through no fault of the operator, then a legal excuse will be established. In the instant case the uncontradicted evidence was that it was a clear day, no other traffic or obstructions of any kind on the highway between plaintiff and defendant, and no semblance of an excuse was presented why plaintiff did not see the defendant's hay wagon.

The jury under special findings say that he could have seen it for 200 feet. They apparently lost sight of the court's instruction as to what their duty was under that situation. If he could see, then he is chargeable with seeing that which was there to be seen, unless some situation is presented which would constitute a legal excuse. This provision of the section of the Code §12603 has

been before the courts so often that we refrain from any extended analysis such as would be necessary were we considering the section as an original question.

There certainly is nothing in this case that can distinguish it from the line of authorities determining negligence per se.

We will, however, list some of the applicable cases decided by the Supreme Court;

The first case was that of **Skinner v Pennsylvania R. R. Co.,** 127 Oh St 69. Also the case of **Gumley v Cowman,** 129 Oh St 36. The last case by the Supreme Court was that of **Smiley v Arrow Spring Bed Co.,** 138 Oh St 81 (Ohio Bar, March 24, 1941).

Also the following decisions by various Courts of Appeals of the state:

**Beal v Ry. Co.,** 50 Oh Ap 397;

**Kern v Cartage Co.,** 55 Oh Ap 481;

**Motor Freight Co. v Flick,** 21 Abs 42.

Counsel for plaintiff cite the following cases, all of which we have examined:

**Hangan, a minor v Hatfield,** 135 Oh St 281.

This case was an appeal from our court and therefore we are thoroughly familiar with the attending facts. It it readily distinguishable from the instant case. This case presented the question of a legal excuse so as to avoid the legal implication of negligence per se.

Defendant also refers us to the case of **Matz, Admr. v Curtis Cartage Co.,** 132 Oh St 271. This case also presented the question of legal excuse.

The case of **Gund v Scott Transportation Co.,** 132 Oh St 387, likewise presents the question of legal excuse.

In the instant case nothing was presented through the evidence which would authorize the submission of any question of excuse. The jury's answer to interrogatory No. 2 does not change the situation. The jury made the following answer: "The hay wagon was obstructing too much of the roadway."

In the first place, this answer is a mere conclusion and should not be considered. The question which invoked the answer was also improper, in that it permitted the jury to answer just as they did. The Ohio authorities are universal that answers in the nature of conclusions are ██ not such as are contemplated under the provisions of the Code authorizing submission of interrogatories. However, even if this objection is waived, the answer will not overcome the irresistible conclusion that plaintiff was guilty of negligence as a matter of law, and that such negligence was a contributing proximate cause of the accident and resultant injuries.

We have no difficulty in arriving at the conclusion that the finding and judgment of the trial court were correct, and therefore we affirm.

Costs in this court will be adjudged against the appellant. Cause remanded for collection of costs and further proceedings according to law.

GEIGER, PJ. & HORNBECK, J., concur.